WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| Steven Jones, | ) | No. CV 05-2589-PHX-JAT |
| Plaintiff, | )<br>) | **ORDER** |
| vs. | )<br>) |  |
| Jo Anne B. Barnhart, Commissioner of<br>Social Security Administration, | )<br>)<br>) |  |
| Defendant. | )<br>) |  |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) (Supp. 2005) seeking judicial review of Defendant's denial of his application for disability benefits under the Social Security Act. Pending before the Court are the parties' cross motions for summary judgment (Doc. #10 (Plaintiff's Motion) and Doc. #14 (Defendant's Cross-Motion).) The Court now rules as follows.

I.   **BACKGROUND**

   A.   **Facts and Procedural History**

Plaintiff was born on May 15, 1970.  (Doc. #16 ¶ 1.)  He has high school education. (Doc. #16 ¶ 1.) His past employment includes framer, cashier, armed security guard, laborer, and front end loader.  (Doc. #16 ¶ 1.)  In May 2001, he fell from a roof while working and sustained injuries to his left wrist, right elbow, and right pelvis.  (Doc. #16 ¶ 2.)  A month

later, he suffered a second injury due to a trip and fall accident, which resulted in injury to his left wrist and right elbow.  (Doc. #16 ¶ 5.)

On May 24, 2002, Plaintiff filed an application for disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (Supp. 2005).  The initial application was denied and it was denied again upon reconsideration.  Plaintiff appealed and, through his attorney, amended his original disability onset day of May 7, 2001 to September 26, 2002.   An administrative law judge ("ALJ") held a hearing and issued a decision on July 20, 2004.  The ALJ determined that Plaintiff was ineligible for disability benefits because he was not "disabled" under statute because he could still perform some jobs available in significant numbers in the economy.  (R. at 29.)  The Appeals Council denied his request for review on July 30, 2004, making the ALJ's decision final.  Plaintiff filed a complaint requesting review of the ALJ's decision with this Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Medical Evidence**

Plaintiff met with two treating physicians whose reports the ALJ considered in issuing his opinion.  Dr. Lipton, M.D., Plaintiff's post-accident surgeon concluded in March 2002 that Plaintiff was capable of light to medium work where he occasionally lifted up to fifty pounds and frequently lifted no more than twenty pounds.  He also recommended vocational rehabilitation.  (R. at 132.)  Dallas Peterson, M.D., Plaintiff's primary care doctor, issued a medical assessment on March 18, 2004 finding  that Plaintiff's physical disabilities and pain levels severely limited his ability to work and function.  (R. at 254–56.)

Plaintiff additionally treated with other medical personnel. A psychiatric nurse practitioner, Leslie Schraeder, diagnosed him with major depression but assigned him a Global Assessment of Functioning Score of seventy-five (R. at 151), which meant that the present symptoms were transient and expected reactions to psychosocial stressors that only slightly impaired social, occupational, or school functioning (Doc. #14 ¶ 4).  In a letter dated June 20, 2004,  Schraeder asserted that Plaintiff "is unable to work at the current time and may possibly never be able to work."  (R. at 285.)  Plaintiff also met with therapist Richard

Strahle, M.C., who opined in a supplemental questionnaire regarding Plaintiff's functional capacity that Plaintiff had severely limited ability to function in a work environment. (R. at 273–74.)

Finally, a medical doctor and a psychologist examined Plaintiff. The psychologist, James Armstrong, Ph.D., found Plaintiff fully alert and polite with adequate memory, attention, and social skills. (R. at 220–25.) The doctor, Juli Sampat, M.D., conducted an internal medicine evaluation in April 2003. (R. at 209.) Dr. Sampat concluded that Plaintiff's injures from the accidents had healed but left with him some limited movement and possible depression. She also found he was under the care of a psychiatrist and participating in vocational rehabilitation where he would learn a new trade commiserate with his physical limitations. (R. at 212–13.) Regarding his ability to do work-related activities, Dr. Sampat indicated Plaintiff could stand and/or walk for six hours out of an eight-hour workday and could occasionally lift up to thirty pounds and frequently lift up to fifteen pounds. (R. at 281.)

## II.    STANDARD OF REVIEW

A reviewing federal court only addresses the issues raised by the claimant in his appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Commissioner's decision to deny benefits will be overturned "'only if it is not supported by substantial evidence or if it is based on legal error.'" *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Id.* It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick v. Charter,* 157 F.3d 715, 720 (9th Cir. 1998). If on the whole record before this Court, substantial evidence supports the Commissioner's decision, the Court must affirm it, *see*

1  *Hammock v. Bowen*, 879 F.2d 498, 501 (9ᵗʰ Cir. 1989) and 42 U.S.C. § 405(g), even if the

2  evidence supports more than one rational interpretation, *see Thomas,* 278 F.3d at 954.

3        Under the Social Security Act, a "disability" is defined as an "inability to engage in

4  any substantial gainful activity by reason of any medically determinable physical or mental

5  impairment which can be expected to result in death or which has lasted or can be expected

6  to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An

7  individual is determined to be under a disability "if his physical or mental impairment or

8  impairments are of such severity that he is not only unable to do his previous work but

9  cannot, considering his age, education, and work experience, engage in any other kind of

10  substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §

11  423(d)(2)(A); *Reddick*, 157 F.3d at 721.

12        The ALJ determines an applicant's eligibility for benefits by deciding the applicant's

13  status with respect to each of the following:

14       1.    is the applicant currently engaged in "substantial gainful activity";

15       2.    does the applicant have a "medically severe impairment or combination
16             of impairments";

17       3.    does the applicant's impairment equal one of a number of listed
           impairments that the Commissioner acknowledged as so severe as to
18             preclude the applicant from engaging in substantial gainful activity;

19       4.    if the applicant's impairment does not equal one of the "listed
           impairments," is the applicant capable of performing his or her past
20             relevant work;

21       5.    if the applicant is not capable of performing his or her past relevant
           work, is the applicant able to perform other work in the national
22             economy considering his or her age, education, and work experience.

23  *See Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987) (citing 20 C.F.R. § 404.1520(b)-(f)).

24  If the claimant shows that he or she is unable to perform past relevant work, the burden

25  shifts to the Commissioner to show that the claimant "can perform other substantial gainful

26  work that exists in the national economy." *Reddick*, 157 F.3d at 721.

27

28

1   **III.   DISCUSSION**

2        **A. Evidence from Treating Sources**

3        *1. Opinion of a Treating Physician*

4        In general, a treating physician's opinion is given deference. *Id.* at 957. However,

5   the ALJ can favor the conflicting opinion of an examining physician over a treating

6   physician's opinion so long as the "ALJ makes findings setting forth specific, legitimate

7   reasons for doing so that are based on substantial evidence in the record." *Id.* (citation and

8   internal quotation marks omitted);  *see Rollins v. Massanari*, 261 F.3d 835, 856 (9th Cir

9   2001) (finding that a treating physician's opinion may be rejected for specific and legitimate

10  reasons if it is not supported by clinical or laboratory findings (*i.e.* x-rays) or is inconsistent

11  with other substantial evidence of record (*i.e.* other doctor's reports, or the treating

12  physician's own reports));  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (finding that

13  a specific, legitimate reason for setting aside a treating physician's opinion where the

14  opinion it is premised on the claimant's subjective complaints of pain).

15        Plaintiff argues that the ALJ improperly rejected his treating physician's assessment

16  that Plaintiff could not work because the ALJ merely dismissed the assessment as unreliable

17  without providing specific, legitimate reasons based on substantial evidence in the record.

18  Defendant contends that the ALJ did not err because the assessment by the treating

19  physician, Dr. Peterson, was inconsistent with other medical evidence on the record.

20  Defendant specifically references Dr. Sampat's report, Dr. Lipton's opinion, and Dr.

21  Peterson's own treatment records that indicate only occasional findings of tenderness.

22        This Court concludes that the ALJ provided specific, legitimate reasons for giving less

23  weight to the treating physician's assessment. The ALJ rejected Dr. Peterson's assessment

24  because it was "inconsistent with Dr. Peterson's treatment notes, which . . . [only contained]

25  occasional findings of tenderness," and the physician's assessment was largely based on

26  Plaintiff's subjective complaints of pain and Plaintiff's personal appraisal of his physical

27  limitations.  (R. at 27.)  The ALJ noted that on the day Dr. Peterson filled out the

28  assessment, he opined in his treatment notes that Plaintiff was essentially "unable to do

1   much of anything" based on his conversation with Plaintiff. (R. at 253.) Additionally, the

2   ALJ questioned Plaintiff's credibility based on his therapist's statement, written the same

3   month Dr. Peterson completed his assessment, that Plaintiff "ha[s] little desire to return to

4   the work force so as not to jeopardize his chances of receiving disability and SSI benefits."

5   (R. at 277.)[1]

6      While Dr. Peterson's treatment notes reveal consistent rather than "occasional"

7   findings of tenderness[2] and frequent findings that Plaintiff had limited range of motion in

8   various limbs (R. at 252–53, 257–65), these findings can be afforded less weight for the

9   reasons articulate by the ALJ. The finding of "tenderness" resulted from Plaintiff telling Dr.

10  Peterson that touching certain body parts caused pain. Thus, this evidence is precisely the

11  subjective complaints of pain that justify setting aside a treating physician's opinion.

12     Moreover, Dr. Peterson's conclusion that Plaintiff's limited physical capabilities and

13  complaints of severe pain absolutely compromised Plaintiff's ability to function is

14  inconsistent with medical reports from Plaintiff's other treating physician, Dr. Lipton, and

15  his examining physician, Dr. Sampat. Both Dr. Lipton and Dr. Sampat noted Plaintiff's

16  limited range of motion in some limbs and subjective complaints of pain (R. at 134, 210–11)

17  yet both concluded that he was able to perform work-related activities (R. at 134, 216–19).

18     The ALJ did not err in dismissing Dr. Peterson's assessment as unreliable because the

19  ALJ offered specific, legitimate reasons for setting aside the treating physician's opinion.

20  Plaintiff's subjective complaints of pain did not support actual clinical findings. Because

21  the ALJ is responsible for resolving conflicts in medical testimony and determining

22

23     [1] The ALJ further hinted at Plaintiff's doubtful credibility in writing that "Progress

24  notes dated June 25, 2003 from [Dr. Peterson] indicated the claimant asked for an increase
    in his dosage of narcotic pain medication . . . . Yet, on examination his back was not tender

25  to palpation and range of motion in the extremities was normal." (R. at 24.)

26     [2] Treatment notes from five of the six visits prior to the March 18, 2003 assessment,

27  contain comments such as "discomfort all around the left wrist," "low[er] back is tender,"
    "back exquisitely tender to palpation over entire back," and "diffuse tenderness across the

28  mid upper back and all up and down the spine." (R. at 253–58.)

1   credibility, the ALJ appropriately questioned Plaintiff's credibility based on the therapist's

2   opinion and favored Dr. Lipton's and Dr. Sampat's opinions over Dr. Peterson's opinion.

3        *2. Opinions of the Nurse Practitioner and Therapist*

4        Under the Code of Federal Regulations, the ALJ may give less weight to opinions

5   from "other" medical sources than to opinions from "acceptable medical sources" such as

6   licenced physicians. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). "Other" medical

7   sources include nurse practitioners and therapists.   20 C.F.R. §§ 404.1513(d)(1) and

8   416.913(d)(1).   However, where a treating nurse practitioner works closely under a

9   physician and consults with that physician regarding the patient, the nurse practitioner

10  becomes an agent of the physician and her opinion becomes a part of the physician's

11  opinion. *Gomez*, 74 F.3d at 971.  In addition, a nurse practitioner working together with a

12  licenced physician constitutes an "interdisciplinary team" so that a "'report of an

13  interdisciplinary team that contains the evaluation and signature of an acceptable medical

14  source is [also] considered acceptable medical evidence.'" *Id.* (quoting 20 C.F.R. §

15  416.913(a)(6)).

16       Plaintiff argues that the ALJ erred by not treating the opinions of the nurse practitioner

17  and therapist as "accepted medical sources" because the opinions stemmed from the work

18  of "interdisciplinary teams."  They were part of interdisciplinary teams, Plaintiff contends,

19  because the nurse practitioner and the therapist are medical care providers, and the

20  therapist's records were signed by a medical doctor.  Defendant counters that the ALJ

21  appropriately rejected the nurse practitioner's opinion because (1) she was not an

22  "acceptable medical source"  as defined by the Code of Federal Regulation and (2) she

23  provided no support for her assertion that Plaintiff was unable to work as she had diagnosed

24  Plaintiff with only mild depression and impairment.  Similarly, Defendant argues that the

25  ALJ properly rejected the therapist's opinion because the therapist was not an "acceptable

26  medical source," his recommendations were inconsistent with his treating notes and

27  reflected Plaintiffs subjective complaints, and his notes indicated Plaintiff was resisting

28  employment in order to receive Social Security benefits.

The Court agrees with Defendant that the ALJ properly accorded less weight to the nurse practitioner's opinion.  There is no evidence on the record that the nurse practitioner worked closely under a physician and consulted with the physician regarding Plaintiff.  Nor does the record support a finding that the nurse practitioner worked with a licenced physician to produce an evaluative report signed by the physician.

The Court also concludes that the ALJ properly rejected the therapist's opinion that Plaintiff was unable to sustain employment.  Importantly, the ALJ did not reject the opinion because the therapist was an "other" source rather than an "acceptable medical source" as Plaintiff contends.  (R. at 27–28.)  Instead, the ALJ rejected the therapist's opinion because it was inconsistent with his treatment notes, which nearly uniformly found that Plaintiff "possesses all the skills and intelligence necessary to achieve reasonable goals and objectives."  (R. at 281–84.)  Even when the therapist noted signs of depression in Plaintiff, he continued to maintain that Plaintiff was capable of achieving his professional goals and achievements.  (R. at 278–80.)  Only once did the therapist describe Plaintiff's prognosis as "poor" because Plaintiff was indifferent to employment.  However, the therapist attributed Plaintiff's disinterest to his efforts not to "jeopardize his chances of receiving disability and SSI benefits."  (R. at 277.)

**B. Misinterpretation of Evidence**

As noted above, the Commissioner's decision to deny benefits must be supported only by substantial evidence, which is more than a mere scintilla, but less than a preponderance. *Thomas*, 278 F.3d at 954.  Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it, *see Hammock*, 879 F.2d at 501 and 42 U.S.C. § 405(g), even if the evidence supports more than one rational interpretation, *see Thomas,* 278 F.3d at 954.  It is the job of the ALJ, not the reviewing court, to resolve conflicts in evidence.  *Matney*, 981 F.2d at 1019.

Plaintiff contends that the ALJ misinterpreted the medical evidence.  First, Plaintiff argues the ALJ only cited Dr. Armstrong's assessment for proof of the adequacy of the claimant's social skills when the assessment actually indicates Plaintiff's inability to sustain

1   employment.  In addition, Plaintiff argues that the ALJ only cited but did not consider Dr.

2   Peterson's opinion in light of the medical evidence of upper extremity problems from Dr.

3   Lipton.  Finally, Plaintiff disputes the degree of weight that the ALJ placed on Dr. Sampat's

4   assessment because Dr. Sampat concluded Plaintiff had no impairment while Dr. Lipton

5   found Plaintiff had a twenty six percent whole person impairment stemming from his upper

6   extremity injuries.

7          Defendant counters that the ALJ properly considered the evidence from Dr.

8   Armstrong, Dr. Peterson, and Dr. Lipton.  Defendant notes that the ALJ considered Dr.

9   Armstrong's report in concluding that Plaintiff could perform a limited range of work.

10  Though Dr. Lipton found twenty six percent whole person impairment, the doctor also

11  opined on the same record that Plaintiff had some ability to lift using his upper left extremity

12  and full ability to lift with his right arm.  This opinion, Defendant argues, is consistent with

13  the ALJ's conclusion that Plaintiff could perform light work.

14         The Court concludes that the ALJ did not misinterpret the medical evidence.  First,

15  the ALJ adequately considered Dr. Armstrong's assessment and diagnosis in determining

16  Plaintiff's impairment.  (R. at 24.)  The ALJ extensively mentioned Dr. Armstrong's

17  assessment in determining the degree of functional limitation posed by Plaintiff's

18  depression.  (R. 24–26.)  The ALJ also considered Dr. Armstrong's assessment in

19  concluding that Plaintiff's residual functioning capacity permitted him to engage in light

20  exertional work.  (R. at 27.)  Contrary to Plaintiff's assertion, Dr. Armstrong did not

21  explicitly indicate whether Plaintiff could sustain employment. Out of the sixteen questions

22  assessing Plaintiff's ability to do work-related activities, Dr. Armstrong indicated that

23  Plaintiff could perform "good" or better on half of them.  (R. at 226.)  Dr. Armstrong only

24  indicated Plaintiff's ability as "[p]oor or [n]one" when it comes to "[d]eal[ing] with work

25  stresses"  and  "[u]nderstand[ing],  remember[ing],  &  carry[ing]  out  complex  job

26  instructions."  (R. at 226.)  However, these findings are not inconsistent with the ALJ's

27  conclusion that Plaintiff was able to perform light exertional work.

28         Second, the ALJ did not misinterpret the medical evidence of Plaintiff's upper

1    extremity problems indicated in Dr. Lipton's report when the ALJ considered Dr. Peterson's

2    opinion. Though Dr. Lipton did write that Plaintiff had "25% impairment of the whole

3    man," he also concluded that Plaintiff would be limited to lifting a maximum of thirty

4    pounds with his left upper extremity but retained full use of his right upper extremity. (R.

5    at 135.) In the same record, Dr. Lipton recommended that a functional capacity evaluation

6    be conducted. (R. at 135.) The subsequent evaluation found that Plaintiff was capable of

7    "medium to light duty" work (R. at 132) and ought to enroll in vocational rehabilitation (R.

8    at 132). Thus, any consideration of Dr. Lipton's report in light of Dr. Peterson's opinion

9    would weigh against the validity of Dr. Peterson's opinion, which found Plaintiff unable to

10   work even at a sedentary exertional level (R. at 27).

11         Third, the ALJ did not misinterpret the evidence by placing too much weight on Dr.

12   Sampat's assessment.  Dr. Sampat did not, as Plaintiff alleges, fail to review Plaintiff's

13   medical records.  Dr. Sampat's report discusses Plaintiff's medical history including

14   reviewing Dr. Lipton's evaluations at length. (R. at 209–11.) Also, Plaintiff's contention

15   that Dr. Sampat found that Plaintiff had "no restrictions" on his upper extremity is not true.

16   Dr. Sampat's report notes limited movement of Plaintiff's right elbow and left wrist (R. at

17   212), which is consistent with the upper extremity limitations identified by Dr. Lipton (R.

18   at 135–36).

19   **IV.   CONCLUSION**

20         Having reviewed the record as a whole, considering both the evidence that supports

21   the ALJ's conclusions and the evidence that detracts from his conclusions, the Court will

22   grant Defendant's Motion for Summary Judgment and affirm the ALJ's decision. Sufficient

23   evidence supports the ALJ's decision to give less weight to Dr. Peterson's work-related

24   functional capacity assessment because the assessment was largely backed by Plaintiff's

25   subjective complaints of pain and the ALJ had reason to doubt Plaintiff's credibility. The

26   ALJ properly rejected the nurse practitioner's opinion because she was not a statutorily

27   defined "acceptable medical source" or part of an "interdisciplinary team." Similarly, the

28   ALJ properly rejected the therapist's opinion because the opinion was inconsistent with the

therapist's treatment notes. Finally, the ALJ did not misinterpret the evidence from Dr. Armstrong, Dr. Peterson, and Dr. Lipton but reasonably considered all the evidence in reaching his conclusions.

Accordingly,

**IT IS ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. #14) is granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #10) is denied.

**IT IS FURTHER ORDERED** that this decision shall serve as the mandate in this case.

DATED this 21st day of April, 2006.

James A. Teilborg
United States District Judge